IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 0 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| RENE REYNA JR., § | |
| Plaintiff, § | |
| § | |
| § | |
| § | CIVIL ACTION NO. B-01-64 |
| VS. § | (JURY REQUESTED) |
| § | |
| CITY OF BROWNSVILLE and § | |
| RAFAEL MOLINA, § | |
| Defendants. § | |

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF THE DISTRICT COURT:

COME NOW the City of Brownsville and Rafael Molina, individually and in his official capacity, Defendants herein, and pursuant to the Federal Rules of Civil Procedure files this their Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment and for cause would respectfully show unto the Court the following:

**PLAINTIFFS' RESPONSE**

1.      This is a Fourth Amendment excessive force allegation case brought under 42 U.S.C. § 1983. Plaintiff seeks recovery for injuries sustained when he was shot three (3) times in the course of his arrest on June 23, 1998, by Defendant Rafael Molina, a Brownsville police officer, following a vehicular pursuit during in which Plaintiff attempted to run over several people and intentionally drove his car into other vehicles. Plaintiff later pleaded no contest to and was convicted of aggravated assault. Defendants put forth several grounds as to why Plaintiff's claims should be dismissed via summary judgment.

2. Defendants first asserted that since Plaintiff was convicted of aggravated assault arising out of his arrest, a finding of excessive force would be inconsistent with his sentence. An excessive force claim is barred under 42 U.S.C. § 1983 as a matter of law if brought by an individual convicted of aggravated assault or some similar offense related to the same events necessitating the use of force. *See Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000), *cert denied* 531 U.S. 959, 121 S. Ct. 384(2000). As a result, Plaintiff cannot bring a § 1983 claim against the Defendants. Defendants also assert the Plaintiff cannot hold the City of Brownsville liable because Plaintiff cannot establish a policy, custom, or practice caused any alleged constitutional violation. Defendant Molina also asserts his entitlement to qualified immunity.

3. Plaintiff argues that since the shooting took place after he had allegedly stopped his vehicle and supposedly surrendered, a finding of excessive force would not invalidate his conviction and therefore can be brought against the Defendants. Plaintiff next argues the City of Brownsville can be held liable due to a policy and practice which was unconstitutional. Plaintiff finally argues that since genuine issues of material fact exist regarding Defendant Molina's reasonable beliefs, summary judgment is improper. Defendants now reply to Plaintiff's response.

## DEFENDANT'S SUPPLEMENTAL EVIDENCE

4.     Exhibit A    Affidavit of Harold Warren

       Exhibit B    Affidavit of Rafael Molina

       Exhibit C    Affidavit of Victor Rodriguez

       Exhibit D    Deposition of Leslie Sweet

## DEFENDANT'S REPLY

**A.     Plaintiff's claims are barred as a matter of law.**

5.     Defendants argue in their Motion for Summary Judgment, that Plaintiff Reyna's claims are barred as a matter of law. The Supreme Court has held that deadly force may be used incident to an arrest if it is necessary to prevent the escape of a fleeing felon and the police officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). The Supreme Court further explained that if a suspect threatens the officer with a weapon or there is probable cause to believe that he has committed, in the past, a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used to prevent escape. *Id* at 11. Further, a peace officer is justified in using deadly force in the course of an arrest if he reasonably believes that there is a substantial risk that the person to be arrested will cause death or serious bodily injury to the officer or another if the arrest is delayed. TEX. PEN. CODE § 9.51(c)(2). As a result, if a fleeing felon has committed a crime involving the infliction of serous physical harm or the police officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others, the officer may use deadly force to prevent escape.

6.     The Supreme Court has also held that plaintiffs may not challenge, in a civil suit, a conviction in a criminal matter. *Heck v Humphrey*, 512 U.S. 477, 486-487, 114 S.Ct. 2364, 129 L.Ed.2d. 383 (1994). In order for a plaintiff to proceed on any claims that would render a conviction invalid, he must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a court's issuance of a writ of a habeas corpus. *Id.* A claim

for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983. *Id.* To permit a plaintiff to proceed with such claims would permit a collateral attack on the conviction through the vehicle of a civil suit. This has been expressly rejected by the United States Fifth Circuit and the United States Supreme Court. *Randell v Johnson*, 227 F.3d. 300, 301 (5th Cir. 2000); *Heck* at 486.

7.   In the instant case, Plaintiff pled no contest and was convicted of aggravated assault arising out of the same incident Plaintiff has brought as a civil rights cause of action. A plea of no contest has the same effect as a plea of guilty and results in a conviction. TEX. CODE OF CRIM. PROC. ANN. ART. 27.02 (Vernon 1999). After pleading no contest, Plaintiff was duly convicted of the aggravated assault of Rafael Molina, as charged in the indictment, and was sentenced to five (5) years of imprisonment. The indictment states that on or about the 23rd day of June, 1998, the Plaintiff intentionally and knowingly threaten Rafael Molina with imminent bodily injury and used a deadly weapon, to-wit: a motor vehicle, during the commission of the assault. Having been convicted of assaulting Rafael Molina with a deadly weapon, it has been judicially established Plaintiff Reyna committed a crime involving the threatened infliction of serous physical harm. This conviction judicially establishes that Plaintiff Reyna intentionally and knowingly threatened such injury. As a result, under the reasoning of *Tennessee v. Garner*, Rafael Molina's use of force during the arrest was not was excessive.

8.   The Plaintiff argues that since he claims he was surrendering, he did not pose a threat to anyone and therefore Defendant Molina's use of force was excessive. In order to establish his claims against the Defendants, Plaintiff has to establish that Defendant Molina's actions constituted the use of excessive force. However, as already established, he was convicted of aggravated assault, a crime

4

involving the threatened infliction of serous physical harm. *Tennessee v. Garner*, clearly states that deadly force may be used, and is not excessive, if a suspect threatens the officer with a weapon or there is probable cause to believe that he has committed, in the past, a crime involving the infliction or threatened infliction of serious physical harm. *Id.* at 11. Therefore in order to establish Defendant Molina's actions were excessive, the Plaintiff has to establish his conviction for aggravated assault did not occur. Such a finding challenges the Plaintiff's conviction and is contrary to *Heck*. As a result, Plaintiff's claims should be barred as a matter of law.

**B.     No Policy, custom, or practice exists to create municipal liability.**

    **1.     Plaintiff's Argument**

9.     Even if the court finds the Plaintiff's claims are not barred as a matter of law, Plaintiff still cannot prevail on his claims against the City of Brownsville. Municipal liability occurs only when the execution of a municipality's policy or custom causes the injury, and it does not arise vicariously through the acts of its employees. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Plaintiff alleges that a "custom or practice" of Defendant City of Brownsville caused the constitutional deprivation of which he complains. Specifically, Plaintiff alleges the City of Brownsville has an unconstitutional policy allowing its officers to use deadly force. The Plaintiff also alleges the City of Brownsville has an unconstitutional practice of allowing its officers to think they can use deadly force, when under the law, they cannot.

    **2.     The City of Brownsville's policy is constitutional**

10.     In support of the Plaintiff's contention the City of Brownsville has an unconstitutional policy allowing its officers to use deadly force, the Plaintiff offers the opinion testimony of Leslie Sweet. Mr. Sweet testified he believes the City of Brownsville's written policy, page 49, section D, number

2, is unconstitutional. He believes the policy is unconstitutional because it does not use the term "imminent danger." (Ex. D. at 21, lines 1-8.) He believes a policy is only constitutional if it states that deadly force may be used only to prevent the escape of a dangerous fleeing felon who has shown a propensity to gravely injury or kill someone, who has used violence in his immediate past, and there is a significant and imminent threat to human life should escape occur. (Ex. D. at 22, lines 2-5.) Since the City of Brownsville policy does not require an imminent threat with regards to fleeing felons, only probable cause to believe harm may occur, Mr. Sweet considers the Brownsville policy to be unconstitutional.

11.   The only evidence of an unconstitutional policy is the opinion of Leslie Sweet. The testimony of a single expert is generally inadequate to show an unconstitutional policy seeking to hold a municipality liable for alleged civil rights violations. *Conner v Travis County*, 209 F.3d 794, 797 (5th Cir. 2000.) The policy in affect at the time of the incident was drafted by former chief of police Victor Rodriguez. (Ex. C.) The policy is the mirror image of the International Association of Chiefs of Police Model Policy on use of Force. (Ex. A., Ex. C.) The International Association of Chiefs of Police ("IACP") is the largest police association in the world and its Model Policies are relied upon by numerous police departments across this nation. (Ex. A., Ex. C.)  The policies have been scrutinized extensively to assure that legal requirements and constitutional rights are protected. (Ex. A., Ex. C.) The Model Policies are recognized as appropriate and constitutional policies and have been recognized by the United States Supreme Court. (Ex. A., Ex. C.)

12.   As a matter of fact, the seminal case on the use of deadly force when apprehending a fleeing felon, *Tennessee v. Garner*, cited to the IACP in its argument. 471 U.S. at 19. The Court recognized the IACP as a reliable source and authority in evaluating police policies. The Unites States Supreme

Court again recognized the IACP and its Model Policies as reliable authority in *City of Springfield v Kibbe*. 480 U.S. 257, 272 n.2, 107 S.Ct. 1114, 94 L.Ed. 2d. 292 (1987). In *Springfield*, the Court cited to the IACP policies on traffic procedures and the use of deadly force relating to whether the City of Springfield had a constitutional policy and recognized the policy as being an appropriate authority on the subject. The United States Court of Appeals for the Fifth Circuit has also cited to the IACP policies as being reliable authority. *Gutierrez v City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998).

13.     The City of Brownsville Police Department's policy on when to use deadly force mirrors the IACP Model Policy with minor exceptions. Both policies follow the requirements set forth in *Tennessee v. Garner*. The *Garner* Court did not require an imminent threat be present when arresting fleeing felons, only that the police officer have probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. 471 U.S. at 11. As a result, it cannot be said the City of Brownsville has an unconstitutional policy regarding the level of force to be used when arresting a fleeing felon.

### 3.     The City does not have an unconstitutional practice.

14.     The Plaintiff next alleges the City had a practice allowing its officers to believe they could shoot a fleeing felon for any reason whatsoever. To support this contention the Plaintiff again relies on the opinion of Leslie Sweet as well as the deposition of Defendant Molina. Plaintiff asserts that statements made by Defendant Molina during his deposition stand for the proposition that he believes the City of Brownsville had a policy which allowed him to shoot a fleeing felon for any reason. Mr. Sweet then asserts that since Molina was never disciplined for shooting Plaintiff Reyna, the City accepted his opinion and started a practice.

15.     The Plaintiff and Mr. Sweet are mischaracterizing Defendant Molina's testimony and misinterpreting the law regarding the creation of a practice. First, as clarified in Defendant Molina's affidavit, at all times, he understands that an officer is not justified in using deadly force to arrest any fleeing felon simply because a felon is running from the officer. (Ex. B.) There must be probable cause to believe the felon poses a significant threat of death or serious injury should he escape before the officer can use deadly force. (Ex. B.) Defendant Molina has been trained in this area by the State of Texas and he receives yearly training from the City of Brownsville on this issue. (Ex. B.) During his deposition, Defendant Molina was asked if he could recollect what the City of Brownsville Police Department manual stated regarding when an officer can draw his weapon and use deadly force. (Ex. B.) Asking a witness to remember the wording of a document is very different than asking him to explain his understanding of his duties and obligations. Defendant Molina incorrectly recited the wording of the manual. (Ex. B.) However, he clearly states that even though he could not remember the exact wording in the manual, he properly understood when he could and could not use deadly force to arrest a fleeing felon. (Ex. B.) He accurately articulated the City of Brownsville use of force policy and that he reasonably believed Plaintiff Reyna posed a significant threat to human life should he escape on the day of the incident. (Ex. B.)

16.     Further, Mr. Sweet, solely relying upon Defendant Molina's deposition testimony, had not read, and was not even aware of, the statement Defendant Molina gave the day of the shooting wherein he clearly articulated why he believed he could discharge his weapon. (Ex. D at p. 25, line 23 - p. 30, line 21). It is clear Mr. Sweet never read Defendant Molina's statement he gave the day of the shooting wherein Defendant Molina stated why he could use deadly force:

"It's where he signs it at the end. Maybe you got a copy of the same thing. Here, that's it. Where he says, 'Based on the subject's prior actions in sideswiping my patrol, the patrol car of Officer Garza, Sergeant Flores and the innocent victims involved in the collision, I felt that the suspect was going to continue eluding the Brownsville Police Department. As a police officer, I feared for my safety and the safety of the public. In an effort to stop the subject from further subjecting my life and the life of the public in jeopardy, I fired my weapon at the subject.'" (Ex D. at p. 30, lines 11-21).

Mr. Sweet never read Defendant Molina's statement given the day of the shooting which should have been of vital importance to any expert reviewing a police officer's use of force since this was the most accurate account of his actions the day of the shooting. This statement clearly shows that Officer Molina feared for his safety and the safety of the public, justifying the firing of his weapon, which clearly conforms with the City of Brownsville Police Department's use of force policy and the accepted policy throughout the country.

17.     Second, Mr. Sweet, himself admits that one officer's actions do not create a practice. (Ex. D at 17, lines 22-25, p. 67, lines 13-19). The law also states that a single incident by a non-policymaking official cannot create a practice which attributes liability to a municipality. Considerably more proof than a single incident will be necessary to establish the requisite fault on the part of the municipality. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). A "pattern of similar incidents" that is "general or widespread" must be shown. *Languirand v. Hayden*, 717 F.2d 220, 227-28 (5th Cir. 1983) *cert denied* 467 U.S. 1215, 104 S. Ct. 2656 (1984). Such a pattern is evident if there are "*numerous* prior incidents" showing a "systemic" violation of constitutional rights. *Hererra v. Valentine*, 653 F.2d 1220 (8th Cir. 1981) (emphasis added); *see also Bennett v.*

*City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) *cert denied* 472 U.S. 1016, 105 S. Ct. 3476 (1985) (en banc) (*citing Adickes v. S.H. Kress 7 Co.*, 398 U.S. 144, 167 & n. 39 (1970)). Mr. Sweet admits he has not reviewed any other incidents nor spoken to any other officers to determine if other officers believe they can use deadly force to arrest any fleeing felon. (Ex. D at 67, lines 1-12, p. 69, lines 8-11.). The Plaintiff cannot point to a single incident outside of the facts made the basis of this lawsuit, which reflect this supposed "practice." As a result, it cannot be said the City has adopted an unconstitutional practice if no evidence exists this supposed "practice" has ever being applied in another instance.

18.   Mr. Sweet also admits that the practice, assuming one even exists, was not created until *after* the incident with Plaintiff Reyna. (Ex. D. at 70, lines 2-4). In order to attribute liability to the City of Brownsville, it must be shown that a systemic and widespread pattern of numerous prior incidents must have *affirmatively* caused the complained of constitutional injury. *Reimer v. Smith*, 663 F.2d 1316 (5th Cir. 1981). If the supposed "practice" did not develop until after the incident with Reyna, then it could not have been the affirmative cause of the injury.

19.   Finally, Defendant Molina testified that after his deposition, he was contacted by Internal Affairs Investigator, James Paschall. (Ex. B.) Mr. Paschall conferred with Defendant Molina in order to find out if Molina accurately understood the City of Brownsville use of force policy. (Ex. B.) Defendant Molina advised Mr. Paschall that he properly understood the policy, explained his understanding, and informed Mr. Paschall that he simply had misquoted the wording from the policy manual. (Ex. B.) Mr. Sweet's statement that the City of Brownsville did not correct Defendant Molina's supposed misunderstanding of the law, is incorrect. As a result, it cannot be said the City of Brownsville adopted an unconstitutional practice.

20.  In order to hold the Defendant City of Brownsville liable for any alleged constitutional violation, the Plaintiff must establish the City of Brownsville had an policy, custom, or practice, which was created with deliberate indifference, which directly caused his injury. The policy of the City of Brownsville is nearly identical to the IACP Model Policy and conforms to all requirements set forth in *Tennessee v. Garner*. The Plaintiff has been unable to establish that an unconstitutional policy exists which directly caused his injury. As a result, Defendant City of Brownsville is entitled to summary judgment.

**C.     Defendants were not deliberately indifferent to Plaintiff's constitutional rights.**

   **1.     No deliberate indifference regarding Defendant Molina's training.**

21.  Plaintiff further alleges that the City of Brownsville is liable under 42 U.S.C. § 1983 because it failed to adequately train Officer Rafael Molina and that failure amounts to a claim of deliberate indifference. In order to hold a municipality liable under § 1983 for a policy of inadequate training, a plaintiff must show that:

> (1) the training procedures of the municipality's policymaker were inadequate;
>
> (2) the municipality's policymaker was deliberately indifferent in adopting the training policy, and
>
> (3) the inadequate training policy directly caused the plaintiff's injury.

*Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996) (*citing City of Canton, Ohio v. Harris*, 489 U.S. 378, 385-87 (1989) and *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992)).

22.  Defendants' Motion for Summary Judgment explains in great detail the training the City of Brownsville provided to Defendant Molina. Plaintiff has not presented any contradictory evidence as to the amount of training given to Defendant Molina. He was trained numerous times in various

11

areas to ensure he understood his duties. Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Board of the County Commissioners of Bryan County, Oklahoma v. Brown* 520 U.S.397, 117 S. Ct. 1382, 1391 (1997). The City of Brownsville trained Defendant Molina repeatedly. Additionally, when a question arose as to whether or not Defendant Molina properly understood his training and the proper policies in place, City of Brownsville consulted with Defendant Molina to ensure he understood the policies correctly. (Ex. B.) As a result, it cannot be said the City of Brownsville was deliberately indifferent to the Plaintiff's constitutional rights.

### 2. Municipal policy was not created with deliberate indifference.

23. In order to hold the Defendant City of Brownsville liable for any alleged constitutional violation, the Plaintiff must establish the City of Brownsville had an policy, custom, or practice, which was created with deliberate indifference, which directly caused his injury. The City must have had the required mental culpability in order to be held liable. *Brown v Bryan County*, 219 F.3d 450 (5th Cir. 2000.) As a result, the Plaintiff must establish the City created its policy or the supposed "practice" with deliberate indifference. Finding a constitutional violation without a deliberate indifference finding would eviscerate *Monell*'s distinction between vicarious liability and liability predicated on the municipality's own constitutional violations. *City of Springfield* 480 U.S. at 268, *dissenting opinion.*

24. The City of Brownsville based its Police Department policies on the IACP Model Policies. The IACP Model Policies are an accepted and recognized guide to creating constitutional policies. As a result, the City of Brownsville's police policies were not created with deliberate indifference to the Plaintiff's constitutional rights. Plaintiff has failed to establish that the alleged policy, even

if unconstitutional, was created with the required mental state. As a result, Defendants are entitled to summary judgment.

**D.     Officer Molina Entitled to Qualified Immunity.**

25.     As a public official exercising discretionary functions, Defendant Molina is shielded from suit and from liability unless Plaintiff can show that he "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). In fleeing felon situations, officers are entitled to qualified immunity if the police officer reasonably believes a suspect poses a threat of death or serious physical harm. *See Snyder v. Trepagnier*, 142 F.3d 791 (5th Cir. 1998) cert dismissed 526 U.S. 1083, 119 S. Ct. 1493 (1999) (officer who shot fleeing suspect believed to have gun entitled to qualified immunity). A police officer is held to act reasonably in using deadly force against a person who is later convicted of aggravated assault with a deadly weapon arising out of the same incident. *See Hainze v. Richards*, 207 F.3d 795 *cert denied* 531 U.S. 959, 121 S. Ct. 384 (2000). (5th Cir. 2000); *Sappington v. Bartee*, 195 F.3d 234 (5th Cir. 1999).

26.     In the instant case, Plaintiff was convicted of aggravated assault with a deadly weapon for the same acts giving rise to his claims under 42 U.S.C. § 1983. A Grand Jury concluded that Officer Molina's actions were legally justified. Accordingly, Defendant Molina's use of force was objectively reasonable with respect to well-established law. Therefore, Defendant, Rafael Molina is entitled to qualified immunity and judgment as a matter of law.

27.     Further, Officer Molina is entitled to qualified immunity for the reason that plaintiff's experts could not, and did not articulate any opinions which demonstrated that Defendant Molina's use of force of the date of the incident was unreasonable. Defendants would refer the Court to all previous

references to Plaintiff's expert Sweet's deposition testimony and the arguments made therein as it relates to the complete wrong assumptions and opinions Mr. Sweet makes as it relates to what is required in connection with using force in a fleeing felon situation. Defendants further refer this Court to Defendants' Objections and Motion to Strike Opinions and Testimony of Plaintiff's Expert Witness, Tim Powers in Connection with Plaintiff's Response to Defendants' Motion for Summary Judgment and as a Testifying Witness at Trial, wherein Defendants object to and ask the Court to strike any and all opinions and testimony of Mr. Powers for the reasons stated therein, including, but not limited to, the fact that Mr. Powers is not a qualified expert and does not meet the required expert opinion test, all as set forth in the accompanying Motion. Defendants' Objections and Motion to Strike Opinions and Testimony of Plaintiff's Expert Witness, Tim Powers in Connection with Plaintiff's Response to Defendants' Motion for Summary Judgment and as a Testifying Witness at Trial is filed simultaneously with this Reply and is incorporated herein for all purposes as if stated herein verbatim.

28. WHEREFORE, PREMISES CONSIDERED, Defendants, the City of Brownsville and Defendant Molina respectfully requests that the Court grant their Motion for Summary Judgment and enter a take-nothing judgment in Defendants' favor as to all of Plaintiff's claims and grant these Defendant such other and further relief to which it may show itself justly entitled.

Signed on April 10, 2002.

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Ste. 460
3505 Boca Chica Blvd.
Brownsville, Texas 78521
Telephone: (956) 541-1846
Facsimile: (956) 541-1893

By: _____
Charles Willette, Jr.
State Bar No. 21509700
USDC Adm. No. 1937

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served on all counsel of record, via courier service, on April 10, 2002 as follows:

George P. Powell
Hinojosa & Powell, P.C.
612 Nolana, Suite 410
McAllen, Texas 78504

_____
Charles Willette

## CERTIFICATE OF CONFERENCE

The rules of this Court do not require a certificate of conference for this motion.

_____
Charles Willette

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RENE REYNA JR., <br> Plaintiff, | § <br> § <br> § <br> § <br> § | |
| VS. | § <br> § | CIVIL ACTION NO. B-01-64 <br> (JURY REQUESTED) |
| CITY OF BROWNSVILLE and <br> RAFAEL MOLINA, <br> Defendants. | § <br> § <br> § <br> § | |

**ORDER SETTING HEARING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On this the ____ day of _____ 2002, came on to be considered, Defendants' Motion for Summary Judgment. After considering same, the Court is of the opinion that a hearing should be held.

IT IS THEREFORE, ORDERED, ADJUDGED and DECREED that Defendants' Motion for Summary Judgment be and is hereby set for hearing on the ___ day of _____, 2002 at ___ a.m. o'clock in this Honorable Court.

SIGNED FOR ENTRY on this the ____ day of _____, 2002.

_____
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RENE REYNA JR., | § | |
|     Plaintiff, | § | |
| | § | |
| | § | |
| | § | CIVIL ACTION NO. B-01-64 |
| VS. | § | (JURY REQUESTED) |
| | § | |
| CITY OF BROWNSVILLE and | § | |
| RAFAEL MOLINA, | § | |
|     Defendants. | § | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On this day, came on to be heard Defendants' Motion for Summary Judgment filed in this cause. All parties appeared by and through respective counsel. The Court after examining the pleadings and summary judgment evidence and hearing the arguments of counsel is of the opinion and finds that Defendants, the City of Brownsville and Rafael Molina, individually and in his official capacity, are entitled to summary judgment.

IT IS THEREFORE, ORDERED ADJUDGED and DECREED that Defendants' Motion for Summary Judgment be and is GRANTED, that PLAINTIFF take nothing as against Defendants, the City of Brownsville and Rafael Molina, individually and in his official capacity, and that all claims against Defendants, the City of Brownsville and Rafael Molina, individually and in his official capacity, be and are DISMISSED with prejudice.

All relief requested and not expressly granted is hereby denied.

Signed this the ____ day of _____, 2002.

_____
United States Magistrate Judge