IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 0 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| RENE REYNA JR.<br>Plaintiff, | §<br>§<br>§<br>§<br>§ | |
| VS. | §<br>§ | CIVIL ACTION NO. B-01-64<br>(JURY REQUESTED) |
| CITY OF BROWNSVILLE POLICE<br>DEPARTMENT AND POLICE OFFICER<br>RAFAEL MOLINA | §<br>§<br>§ | |

**DEFENDANTS' OBJECTIONS AND MOTION TO STRIKE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT WITNESS, TIM POWERS IN CONNECTION WITH PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND AS A TESTIFYING WITNESS AT TRIAL**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, CITY OF BROWNSVILLE and Rafael Molina, individually and in his official capacity, Defendants in the above entitled and numbered cause, and files Defendants' Objections and Motion to Strike Opinions and Testimony of Plaintiff's Expert Witness, Tim Powers In Connection with Plaintiff's Response to Defendants' Motion for Summary Judgment and as a Testifying Witness at Trial and as grounds therefore would respectfully show the Court the following:

### DEFENDANTS' EVIDENCE IN SUPPORT OF IT'S MOTION

1.   In support of this motion, Defendants offer the following evidence which is attached hereto and fully incorporated herein for all purposes:

    A.   Exhibit "A": Deposition Testimony of Tim Powers.

    B.   Exhibit "B": Expert Report of Tim Powers.

    C.    Exhibit "C": C.V. of Tim Powers

## LEGAL STANDARD UNDER DAUBERT

2.    The use of expert opinion, reports and testimony is governed by Federal Rule Evidence 702. (Hereinafter "Rule 702"). This rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
> FED. R. EVID. 702.

3.    Rule 702 was amended in 2000 in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and to the many cases applying *Daubert*, including *Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167 (1999). In *Daubert* the United States Supreme Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science. *Kumho*, 119 S.Ct. at 1178 (citing the Committee Note to the proposed amendment to Rule 702, which had been released for public comment before the date of the *Kumho* decision). The new Rule 702 affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony. Consistently with *Kumho*, the Rule as amended provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful.

4.    *Daubert* sets forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The specific factors explicated by the *Daubert* Court are (1) whether

2

the expert's technique or theory can be or has been tested---that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

5.    Courts both before and after *Daubert* have found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. These factors include:

> (1) Whether experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995).
>
> (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting that in some cases a trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered").
>
> (3) Whether the expert has adequately accounted for obvious alternative explanations. *See Claar v. Burlington N.R.R.*, 29 F.3d 499 ( 9th Cir. 1994) (testimony excluded where the expert failed to consider other obvious causes for the plaintiff's condition).
>
> (4) Whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940,

942 (7th Cir. 1997). See *Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1176 (1999) (Daubert requires the trial court to assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

(5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give. See *Kumho Tire Co. v. Carmichael*, 119 S.Ct.1167, 1175 (1999).

6.   All of these factors remain relevant to the determination of the reliability of expert testimony under Rule 702. The Court in *Daubert* declared that the "focus, of course, must be solely on principles and methodology, not on the conclusions they generate." 509 U.S. at 595. Under Rule 702, as under *Daubert*, when an expert purports to apply principles and methods in accordance with professional standards, and yet reaches a conclusion that other experts in the field would not reach, the trial court may fairly suspect that the principles and methods have not been faithfully applied. See *Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Rule 702 specifically provides that the trial court must scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case. If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995). The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable. *Kumho Tire Co.*

*v. Carmichael*, 119 S.Ct. 1167, 1176 (1999) ("[I]t will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable."). The burden of proof with respect to proffered expert testimony is on party proffering the witness, and admissibility must be shown by preponderance of the evidence. *Bennett v. PRC Public Sector, Inc.*, 931 F.Supp. 484. (S.D.Tex.1996.)

7.    In essence, if an expert is to give an opinion, the expert must justify the basis of that opinion and the basis must meet the *Daubert* requirements. When an expert does not meet the minimum qualifications under Daubert, he will not qualify as an expert for the opinion being given. *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994), rehearing and suggestion for rehearing en banc denied, certiorari denied 115 S.Ct. 902, 513 U.S. 1111, 130 L.Ed.2d 786. (Based on record, witness in civil rights action arising from fatal shooting by city police officer lacked qualifications to testify as expert as to whether alleged failure to properly discipline officers was proximate cause of officer's shooting victim and, in any event, no proper foundation was laid for his ultimate opinion; no qualifications were required for his appointment as deputy sheriff or his subsequent position as sheriff, he had received no formal training, and he had not testified to having made personal observations regarding discipline issue.)

## QUALIFICATIONS OF EXPERT TIM POWERS

8.    Tim Powers has presented himself as an expert in the use of force. Mr. Powers is currently a program director for the sports training program at Trinity Mother Frances Health System in Tyler, Texas. (Ex. C.) He spends approximately ninety percent of his time as a technique, tactic, and strategy trainer in human performance. (Ex. A. at 12, lines 16-23.) Ten percent of his time is spent

consulting. (Ex. A. at 12, lines 3-15.) Mr. Powers was a certified police officer in Wisconsin in 1981. (Ex. A. at 13, lines 22-24) He was a police officer for four years. (Ex. A. at 14, lines 18-23.) He was also appointed chief of police for that time period. (Ex. C.) However, his department consisted only of himself and a few part-time employees. (Ex. A. at 15, lines 23-25.) As Mr. Powers appropriately characterized his former position by stating he was "basically an Andy Griffith." (Ex. A. at 16, line 1.)

9.     Mr. Powers is not a certified police officer in Texas, only a former officer from Wisconsin. (Ex. A. at 45, lines 5-12.) During his entire police career he only arrested twenty-five suspects. (Ex. A. at 30, lines 1-6.) He has never discharged a firearm. (Ex. A. at 28, lines 5-7.) He has never participated in an arrest where anyone else discharged a firearm. (Ex. A. at 29, lines 5-8.) Mr. Powers has never been involved in investigating a police shooting. (Ex. A. at 96, lines 3-6.) He has never served in any Internal Affairs Division to investigate a police shooting or on a shooting review board. (Ex. A. at 96, lines 7-13.) In fact, Mr. Powers has never been involved in a shooting himself. (Ex. A. at 96, lines 14-16.) He has only read about different use of force technics.

10.    Mr. Powers does not hold any licenses or certifications that relate directly to police training or evaluation. (Ex. A. at 21, lines 8-14.) He typically trains on a variety of force options. (Ex. A. at 19, lines 1-6.) His training consists of tactical expandable baton training and handgun retention and disarming. (Ex. A. at 22, lines 2-12.) His training of law enforcement personnel includes hand-to-hand combat, survival skills training, and sports fitness. (Ex. A. at 25, lines 2-11.) Only five percent of his training has anything to do with discharging a weapon. (Ex. A. at 27, lines 18-24.) In fact, seventy-five percent of his entire career is spent training athletes, not law enforcement officials. (Ex. A. at 26, lines 4-17.) He trains in traditional sports such as football, baseball, and soccer. (Ex. A.

at 26, lines 19-25.)

10. Mr. Powers is not a forensic pathologist or chemist. (Ex. A. at 6, lines 16-18, p. 91, lines 16-17.) He is not a shooting reconstruction expert. (Ex. A. at 6, lines 19-21, p. 91, lines 13-15.) He is not an expert in forensic firearm examinations or ballistics. (Ex. A. at 91, lines 19-23.) He is not even certified as a firearms instructor. (Ex. A. at 25, lines 20-25, p. 26, lines 1-3.) Mr. Powers states that his opinion is limited to Officer Molina's use of force on the day of the incident made the basis of this lawsuit. (Ex. A. at 7, lines 6-11.) He admits his particular expertise is fairly focused. (Ex. A. at 11, lines 10-11.) He contends he is qualified to give an expert opinion on whether or not Officer Molina's use of force was reasonable under the circumstances. This case is the first time Mr. Powers has presented himself as a use of force expert and this is the first report he has ever written on the subject. (Ex. A. at 94, lines18-25, p. 95, lines 1-7, 14-19.)

## BASIS OF EXPERT TIM POWERS' OPINION

**A.  Expert's opinion**

11. According to Mr. Powers' expert report, he does not believe Officer Molina's use of force was appropriate given the circumstances. (Ex. B. ) He believes all of the officers acted properly according to standard police procedure right up to the point that Plaintiff Reyna ran into the back of a vehicle stopped at a traffic light. (Ex. B. at 3.) Mr. Powers' opinion states that even if deadly force had been justified, the officer should have fired two initial rounds while giving verbal commands and look to evaluate the situation. (Ex. B. at 5.) His report also comments that in his opinion Officer Roberto Garza withheld information that he directly witnessed the incident. (Ex. B at 6.)

12. During Mr. Powers' deposition, he gave additional opinions associated with the incident made the basis of this lawsuit. Mr. Powers' testified to the general facts supporting his opinions

7

which are reflected on pages 47 through 49 of his deposition. (Ex. A.)

13. Based on his review of the documents presented to him for examination, Mr. Powers opines that Plaintiff Reyna was heavily inebriated as he has consumed eight beers, cocaine, and Rophynol. (Ex. A. at 51, lines 2-4.) He believes Plaintiff Reyna, while driving his stolen vehicle, felt he should pull over for Officer Molina, but wanted to find a safe place to stop. (Ex. A. at 51, lines 4-9.) Mr. Powers' believes that even though Plaintiff Reyna was under the influence of drugs and alcohol and had exhibited a complete disregard for the safety of those around him, once Officer Molina pointed a gun at him, Plaintiff Reyna suddenly returned to reality. (Ex. A. at 51, lines 14-23, p. 52, lines 2-16.) Mr. Powers also believes Plaintiff Reyna did not intentionally collide with an innocent citizen's vehicle at the end of the chase. (Ex. A. at 52, lines 17-23, p. 55, lines 1-5.) He believes Plaintiff Reyna was so heavily intoxicated and high that he could not properly handle the vehicle and unintentionally collided the civilian vehicle. (Ex. A. at 55, lines 6-24.) He does not believe officer Molina fired his weapon from inside his vehicle. (Ex. A. at 57, lines 20-24.) He does not believe officer Garza's testimony. (Ex. A. at 67, lines 9-13.) He believes officer Garza saw the entire incident. (Ex. A. at 67, lines 15-19.) Mr. Powers also believes officer Molina was untruthful about the speed of his vehicle based on the damage to his vehicle. (Ex. A. at 53, lines 24-25, p. 54, lines 1-3.)

**B.   Basis of expert's opinion**

14. Mr Powers did not speak to anyone personally involved in the incident made the basis of this lawsuit. (Ex. A. at 9, lines 7-9.) He is basing his opinions on his review of the documents and his studies of human behavior. (Ex. A. at 64, lines 7-9.) In forming his opinions, Mr. Powers reviewed the testimony, took the portions of Plaintiff's Reyna's deposition testimony that he believed,

discarded portions he did not believe and took parts of the other witnesses testimony that he believed and discarded the portions he did not believe. (Ex. A. at 73.) His opinion is based on a review of these statements, his belief officer Molina is lying, and his belief officer Garza is covering up what he really witnessed. (Ex. A. at 80, lines 4-8.) He also testified that part of his opinion is based on the simulation he performed which supposedly recreated the incident. (Ex. A. at 67, lines 20-25, p. 68, lines 1-25.) The simulation took place in a martial arts dojo parking lot with a Volkswagen Jetta and a plastic pistol. (Ex. A. at 69, lines 3-12.)

## OBJECTIONS AND AUTHORITY TO STRIKE EXPERT TIM POWERS' OPINION AND TESTIMONY

**A.     Defendants' objections**

15.     Defendants object to the opinions and testimony of Tim Powers and moves to strike his opinions and testimony. First, Mr. Powers is not qualified, either through knowledge, skill, experience, training, or education to give the opinions he has offered. Second, his opinions are not based on sufficient facts or data. Mr. Powers' methods of arriving at his conclusions are also not reliable and he did not apply the limited facts in his possession in a reliable manner. As a result, he is not qualified to give an expert opinion or testimony to assist the trier of fact in determining the facts in issue.

**B.     Opinions outside his offered expertise should be stricken.**

16.     Mr. Powers claims to be an expert in the use of force. He is not an expert in any other area. He admits his expertise is very limited and focused. (Ex. A. at 11, lines 10-11.) As a result, any areas outside of his supposed use of force expertise should be stricken. Mr. Powers himself admits that many of his opinions are pure speculation and subjective conjecture. (Ex. A. at 50, lines 21-25,

p. 55, lines 21-24, p. 59, lines 21-24.)

17.  Mr. Powers gave several opinions about how the drugs and alcohol in Plaintiff Reyna's body would affect his abilities and his perceptions. He also gave several opinions regarding Plaintiff Reyna's behavior and psychological state of mind. Mr. Powers is not a medical doctor, a psychiatrist, a psychologist, a forensic pathologist, or chemist. He does not possess the knowledge, skill, or expertise to testify about such facts. Further, Mr. Powers did not perform any examinations of Plaintiff Reyna or apply any scientific or medical knowledge to evaluate him. Any opinions of Mr. Powers regarding Plaintiff Reyna's state of mind, behavior, intentions or the effect any drugs or alcohol would have on him should be stricken.

18.  Mr. Powers also testified he performed a simulation of the incident. He is not a shooting reconstruction expert. (Ex. A. at 6, lines 19-21, p. 91, lines 13-15.) He is not an accident reconstruction expert. He is not an expert in forensic firearm examinations or ballistics. (Ex. A. at 91, lines 19-23.) As a result, he is not qualified to give any opinions or testimony based on the simulation. Further, the simulation took place in a martial arts dojo parking lot with a Volkswagen Jetta and a plastic pistol. (Ex. A. at 69, lines 3-12.) Even if Mr. Powers was a qualified reconstruction expert, he did not use reliable principals or methods in recreating the simulation. He did not use a similar setting. He did not use similar vehicles or equipment. He was not able to simulate the Plaintiff's intoxicated state. As a result, the principles and methods used are not reliable and he did not apply accepted principals in a reliable manner. Defendants objection to any opinions and testimony based on Mr. Powers' simulation and such opinions and testimony should be stricken.

C.  **Opinions regarding use-of-force should be stricken.**

19.  Mr. Powers asserts he is an expert in the proper use of force to be applied under different

circumstances. Mr. Powers' opinion states that he believes officer Molina's use of force was inappropriate under the circumstances. Mr. Powers is not qualified to give such an opinion and, even if he were, the principles and methods used to arrive at his conclusions are suspect and unreliable. As a result, his opinions and testimony regarding officer Molina's use of force on the day of the incident should be stricken.

20.    While Mr. Powers trains law enforcement officers on the use of force, he does not hold any licenses or certifications that relate directly to police training or evaluation. (Ex. A. at 21, lines 8-14.) During his entire police career Mr. Powers has only arrested twenty-five suspects. (Ex. A. at 30, lines 1-6.) Mr. Powers has never discharged a firearm or participated in an arrest where anyone else discharged a firearm. (Ex. A. at 29, lines 5-8.) Mr. Powers has never been involved in investigating a police shooting. He has only read about different use of force technics. He testified that seventy-five percent of his entire career is spent training athletes, not law enforcement officials. (Ex. A. at 26, lines 4-17.) He typically trains in traditional sports such as football, baseball, and soccer. (Ex. A. at 26, lines 19-25.) Only five percent of his training has anything to do with law enforcement personnel discharging a weapon. (Ex. A. at 27, lines 18-24.) While, Mr. Powers was a police officer for four years and was also chief of police, his department consisted only of himself and a few part-time employees. He has never been qualified as an expert in another other case. In fact, this is Mr. Powers' first opinion as a offered use-of-force expert. (Ex. A. at 94, lines 18-25, p. 95, lines 1-19.) Mr. Powers does not possess the knowledge, skill, or experience which would qualify him as an expert in the use of deadly force.

21.    Even if Mr. Powers did possess such qualifications his opinions are not reliable and do not qualify as opinions to be admitted under Rule 702. Mr. Powers did not rely upon sufficient facts or

upon reliable principals or methods in coming to his conclusions. The foundation of Mr. Powers' opinions is based on his review of testimony and reports of witnesses. Mr. Powers would selectively pick which portions of which witness statement he would believe and he formed his opinion based on his belief of witness truthfulness. He testified that he does not know the Plaintiff's reputation for truthfulness. (Ex. A. at 87, lines 9-25.) Such selective and subjective picking and choosing of facts is not a reliable method of applying acceptable principles to a particular factual situation. Further, Mr. Powers relied upon determinations he made during his simulation of the incident and his understanding of how drugs and alcohol effected Plaintiff Reyna. Since Mr. Powers is not a reconstruction expert, a psychiatrist, a psychologist, or a medical doctor, he cannot base his opinions upon those determinations. As a result, the foundation of his use-of-force determinations is unreliable. His opinions and testimony should therefore be struck and he should not be permitted to testify before a jury.

22. WHEREFORE, PREMISES CONSIDERED, Defendants CITY OF BROWNSVILLE POLICE DEPARTMENT, and RAFAEL MOLINA, respectfully prays that the court strike any and all opinions and testimony by Plaintiff's expert, Tim Powers, in connection with Plaintiff's response to Defendants' Motion for Summary Judgment and strike his opinions and testimony as a witness at trial and for other and further relief, at law and in equity, which the Court deems these Defendants are entitled to receive.

Signed on April 10, 2002.

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, Texas 78521
Telephone: (956) 541-1846
Facsimile: (956) 541-1893

By: _____
Charles Willette, Jr.
State Bar No. 21509700
USDC Adm. No. 1937

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing instrument has on, April 10, 2002 been served on all counsel of record via courier service as follows:

Mr. George P. Powell
HINOJOSA & POWELL, P.C.
612 Nolana, Suite 410
McAllen, Texas 78504

_____
Charles Willette

## CERTIFICATE OF CONFERENCE

The undersigned has consulted with Plaintiff's attorney on the above mentioned motion and Plaintiff's attorney is opposed to such motion.

_____
Charles Willette