53

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
## -BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

**MAY 0 3 2002**

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| RENE REYNA, JR., | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. B-01-064 |
| CITY OF BROWNSVILLE and | § | |
| RAFAEL MOLINA, | § | |
| Defendants. | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION

Pending before the Court is Defendants' City of Brownsville and Rafael Molina, individually and in his official capacity, Motion for Summary Judgment (Docket No. 39).

### BACKGROUND

On June 23, 1998, Rene Reyna, Jr., ("Reyna") stole a car. Brownsville Police Officer Robert Garza saw him run a stop sign. A pursuit ensued in which Reyna drove in an extremely dangerous manner. Officer Rafael Molina, who was in the vicinity of the hot pursuit, responded to the call on his radio and managed to stop Reyna. As Officer Molina began to exit his police car to approach Reyna's vehicle, Reyna sideswiped the stolen car against the police car, almost striking Officer Molina. The chase continued. Reyna ultimately drove into a field and began driving in circles. He struck two more police cars. Reyna then drove back onto a heavily-traveled road where he proceeded to ram more vehicles. Eventually Officer Molina stopped Reyna and shot him. Up to this point, the facts are undisputed. However, what actually happened after Officer Molina stopped Reyna is disputed. According to Officer Molina, he shot Reyna while Reyna was still seated in the

1

car because he believed that Reyna was going to continue his efforts to elude the police and that he posed a serious threat to the officer's safety and the safety of the public. Reyna, however, testified at his deposition that Officer Molina shot him after Reyna had stepped out of the car with his hands up. Reyna is currently in prison after pleading no contest to committing an aggravated assault on one of the parties whose car he struck and committing an aggravated assault on Officer Molina. (Docket No. 40 Exhibit B).

## DEFENDANTS' SUMMARY JUDGMENT MOTION

Defendants' Motion for Summary Judgment (Docket No. 39) raises two issues. First, the Defendants claim that under the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), Reyna's claims against Officer Molina are barred as a result of Reyna's criminal conviction for aggravated assault on the officer. Furthermore, the Defendants argue that no policy, practice, or custom of the City of Brownsville caused Reyna's injuries. Somewhat surprisingly, Defendants' Motion for Summary Judgment does not claim that Officer Molina is entitled to qualified immunity. Nonetheless, because the Defendants fully addressed the issue in their Brief Filed in Support of Motion for Summary Judgment (Docket No. 40), the Court will consider it as having been raised.

## SUMMARY JUDGMENT STANDARD

Summary judgment evidence is viewed in the light most favorable to the nonmovant. *See Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 456 (1992). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986).

2

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). Once the movant establishes the absence of a factual dispute, the burden shifts to the nonmovant to show that summary judgment is inappropriate. The nonmoving party may not rest upon the mere allegations or denials of its pleadings. *See Anderson*, 477 U.S. at 256. Instead, the nonmovant must provide specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *See id.* at 242. An issue is material if it involves a fact that might affect the outcome of the suit under governing law. *See Douglass v. United Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). This evidence must do more than create a metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *See Anderson*, 477 U.S. at 256. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.* at 248.

## DISCUSSION

### A. OFFICER MOLINA'S ENTITLEMENT TO QUALIFIED IMMUNITY

A substantial fact dispute exists regarding the shooting in this case. On the one hand, Officer Molina stated (Docket No. 40, Exhibit C) that he shot Reyna while Reyna sat in the stolen car because he believed Reyna was going to drive away again and cause injury or death. On the other hand, Reyna claims (Docket No. 45, Exhibit No. 1) that he had exited the car with his hands up when Molina shot him three times. Raul Guajardo, a criminalist formerly employed by the Texas

3

Department of Public Safety, has opined (Docket No. 45, Exhibit No. 9) that Reyna was standing when he was shot. This testimony bolsters Reyna's story.

Moreover, the summary judgment evidence is confusing with respect to the entry and exit wounds inflicted on Reyna by the bullets that struck him. The medical records from Brownsville Medical Center (Docket No. 45, Exhibit 2) state that the entrance wound in Reyna's abdomen was on the right and the exit wound on the left. According to Officer Molina's statement (Docket No. 40 Exhibit C), however, Officer Molina was on the left-hand side of the stolen vehicle in which Reyna sat, and Officer Molina shot him through the open passenger-side window of the police cruiser. It is this Court's opinion that the material facts set forth by Officer Molina and Reyna are so disputed as to preclude summary judgment on the issue of qualified immunity.

### B. ANALYSIS UNDER *HECK V. HUMPHREY*

*Heck v. Humphrey*, 512 U.S. 477 (1994), stands for the proposition that if a recovery in a 1983 action, which is predicated on excessive force used during an arrest, would necessarily invalidate a conviction arising from the arrest, the plaintiff must show that the conviction was set aside. The City of Brownsville argues that the *Heck* doctrine applies to this case. Reyna's conviction for aggravated assault on Officer Molina has not been set aside. This Court must determine whether a judgment in Reyna's favor would necessarily allow his aggravated assault conviction to be set aside. *See Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000).

The City's argument is unavailing. If a jury were to believe Reyna's version of the shooting, it would not be necessary to set aside Reyna's conviction for the assault on Officer Molina. Even Officer Molina's statements concerning what happened after the stop do not invalidate Reyna's claims. Officer Molina does not claim that his shooting of Reyna was prompted by Reyna's

4

resistance. The aggravated assault charge to which Reyna pleaded no contest concerns events that occurred before the stop. Officer Molina claimed he shot Reyna because he feared, in view of Reyna's conduct, that he would continue his dangerous driving and pose a threat to Officer Molina and the public. *See Rivera v. City of Irving*, 2000 WL 370668, at *5 (N.D. Tex. Apr. 11, 2000)

### C. THE POLICIES AND PRACTICES OF THE CITY OF BROWNSVILLE

The affidavit of Victor Rodriguez, who was formerly Chief of Police in Brownsville, Texas, is attached to Defendant's Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Docket No. 48 Exhibit C). Rodriguez is currently the Chief of Police in McAllen, Texas. According to his affidavit, Chief Rodriguez drafted the Brownsville Police Department's use of force policy, a copy of which is attached to his affidavit. The policy provides two circumstances under which an officer may use deadly force: (1) in order to protect the officer or others from what is reasonably believed to be an immediate threat of death or serious bodily injury and (2) in order to prevent the escape of a fleeing felon whom the officer has probable cause to believe will pose a significant threat to human life should escape occur. This policy passes constitutional muster. *See Tennessee v. Garner*, 471 U.S. 1 (1985) (holding that deadly force may be used if it is necessary to prevent escape and there is reason to believe that a felon poses a significant threat of death or seriously bodily harm to the officer or others).

Reyna makes much of the fact that Officer Molina testified at his deposition that he believed that the policy of the City of Brownsville permitted an officer to use deadly force to apprehend a fleeing felon. (Docket No. 40, Exhibit 6). While it is true that Officer Molina testified that he believed the City of Brownsville permitted the use of deadly force against a fleeing felon, it is apparent that he misspoke. Based on his statement at the time of the shooting and the affidavit

attached to Defendant's Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Docket No. 48, Exhibit B), Officer Molina clearly understood the City's policy with regard to the use of deadly force.

DONE in Brownsville, Texas, on this 3rd day of May, 2002.

John Wm. Black
United States Magistrate Judge

6